UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RONALD BRENT; ZELUS GROUP, LLC; and LESLIE WARE; | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-1281-B |
| AMARU ENTERTAINMENT, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Amaru Entertainment, Inc. ("Amaru")'s Motion to Dismiss or Transfer Action (Doc. 25) and Plaintiffs Ronald Brent; Zelus Group, LLC ("Zelus"); and Leslie Ware's Motion to Strike Reply Brief (Doc. 34). Amaru seeks to dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction or, in the alternative, to transfer venue to the Central District of California. *See generally* Doc. 25, Mot. Dismiss. Because the Court finds that it lacks personal jurisdiction over Amaru, the Motion to Dismiss (Doc. 25) is **GRANTED,** and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE.** Additionally, because the Court does not rely on the allegedly new argument in Amaru's reply, the Motion to Strike Defendant's Reply Brief (Doc. 34) is **DENIED AS MOOT.**

## I.

## BACKGROUND

This case is about the ownership and copyrights of a painting—but not just any painting. The dispute surrounds the painting used as an album cover for the late rapper, Tupac Shakur. Plaintiffs allege a chain of ownership in the painting and seek declaratory judgment against

Amaru, the operating entity of Tupac Shakur's late mother's estate, which claims it is the rightful owner of the painting. The key issue on the Motion to Dismiss is whether Plaintiffs can properly hale Amaru before the Court because that painting is now located in Dallas.

In the mid-1990s, Death Row Records ("DRR") hired Ronald Brent, a prominent artist known as "Riskie," to create art for various album covers. Doc. 24, First Am. Compl., ¶ 10. One of those paintings depicted Tupac Shakur ("Tupac") hanging on a cross. *Id.* ¶ 11. Deemed the "Makaveli Painting,"[1] the image was used as the album cover for Tupac's 1996 album, *Don Killuminati: The 7 Day Theory*:



Doc. 26, Rothschild Decl., ¶ 10. Later that year, Tupac Shakur was murdered. Doc. 26, Whalley Decl., ¶ 2. But his prominence has lived on. Doc. 26, Rothschild Decl., ¶ 4.

---

[1] The Court will use "Makaveli Painting" or "the Painting" to refer to the physical painting and "Makaveli Image" or "the Image" to refer to the image generally.

Today, the Painting is in Dallas, Texas, and several parties lay claim to both the physical painting and its copyright. Plaintiffs Brent, Zelus, and Ware tell one tale of ownership. They allege that Brent retained ownership of the Makaveli Painting until 2012, when he sold it to a third party, Mazuree Ali. Doc. 24, First Am. Compl., ¶ 19. In 2021, Ali then sold the Painting to Zelus. *Id.* ¶ 20. Later that year, Zelus "contracted with Heritage Auctioneers & Galleries, Inc. ('Heritage') to market and publicly auction the Makaveli Painting." *Id.* ¶ 21. And, ultimately, Leslie Ware was the winning bidder. *Id.* ¶ 27.

By contrast, Amaru contends that Brent never "owned" the Makaveli Painting or Image to begin with. *See* Doc. 25, Mot. Dismiss, 5. Rather, because Brent was an employee for DRR, Amaru alleges that ownership of the Painting and Image stayed with DRR. *Id.* Then, in 2013, Amaru, along with Tupac's late mother, Afeni Shakur, filed an action to recover Tupac's DRR recordings and related material, including album artwork. Doc. 26, Rothschild Decl., ¶¶ 5–6. Ultimately, according to Amaru, the purported holder of the DRR materials quitclaimed and assigned the recordings and artwork to Amaru on January 1, 2022. *Id.* ¶ 7.

The parties' dispute came to a head in May 2022, when Amaru learned that Heritage had listed the painting for online auction. *See* Doc. 26, Rothschild Decl., ¶ 9; Doc. 24, First Am. Compl., ¶ 22. Believing it was the rightful owner, Amaru, through counsel, sent a letter to Heritage demanding that the auctioneer withdraw the Painting. Doc. 24, First Am. Compl., ¶ 22. Several days later, Amaru received an email from Zelus identifying itself as the consignor of the painting. *Id.* ¶ 23; Doc. 26, Rothschild Decl., ¶ 20. After several emails between the parties regarding ownership, Zelus and Amaru simultaneously filed two parallel actions in the Northern

District of Texas and the Superior Court of California.[2] Doc. 28, Resp., 2. While the parallel disputes were ongoing, Heritage held the auction, and Ware won the Painting. *Id* at 2–3. Ware has possessed the Painting, which is currently in his Dallas home, ever since. *Id.*

Plaintiffs make two claims. First, Brent seeks a declaratory judgment regarding his ownership in the Makaveli Image's copyright. Doc. 24, First Am. Compl., ¶¶ 29–34. Second, all Plaintiffs seek a declaratory judgment regarding ownership of the Makaveli Painting, namely that (i) Ware is the sole and exclusive owner of the Makaveli Painting, (ii) Amaru does not have any ownership interest in the Makaveli Painting, (iii) Brent was within his legal rights to sell the Makaveli Painting, and (iv) Zelus was within its legal rights to sell the Makaveli Painting. *Id.* ¶¶ 35–40. Amaru moves the Court to dismiss the case for lack of personal jurisdiction or, in the alternative, to transfer the case to the Central District of California. Doc. 25, Mot. Dismiss.

## II.

## LEGAL STANDARD[3]

Courts have long recognized two categories of jurisdiction—jurisdiction over persons and jurisdiction over property. The first, known as *in personam* or "personal jurisdiction," refers to a court's power over a defendant's personal rights. *See Jurisdiction*, Black's Law Dictionary (11th ed. 2019). The second, known as *in rem* jurisdiction, refers to a court's power to adjudicate the rights to a given piece of property. *Id.* The *in personam* and *in rem* classifications, however, may not exhaust all the situations giving rise to jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 246 (1958).

---

[2] The California case was subsequently removed to federal court and later transferred to this district. *See Amaru Ent., Inc. v. Heritage Cap. Corp.*, No. 3-22-CV-2677-B (N.D. Tex. transferred Dec. 1, 2022) (Boyle, J.).

[3] Because the Court finds that it lacks personal jurisdiction over Amaru, it does not address the standard for transfer of venue.

And the difference between *in rem* and *in personam* jurisdiction is not always clear. Indeed, a third category—known as *quasi in rem* jurisdiction—often describes a set of cases residing somewhere in between in rem and in personam jurisdiction. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1070 (4th ed. 2022) ("A quasi-in-rem action is basically what the name implies—a halfway house between in rem and in personam jurisdiction.").

For personal jurisdiction over a defendant, the due process requirements are well established. First, a nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

A defendant's contacts with a forum state may give rise to either general or specific personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction permits a court to hear all claims against the nonresident defendant when the defendant's affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that state. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, by contrast, "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919). Courts thus look to the specific claims and assess their relationship with the defendant's forum-related contacts. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102. In determining whether the assertion of jurisdiction is fair, the court considers: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.*

### III.

### ANALYSIS

The Court begins by analyzing the proper due-process standard for this case, given the parties' arguments regarding *in rem* jurisdiction. Concluding that the traditional "minimum contacts" analysis under *International Shoe* applies, the Court then looks to Amaru's contacts with Texas and finds Amaru lacks sufficient contacts for the Court to exercise jurisdiction.

A.    *The Court Applies the Minimum Contacts Analysis for Due Process*

Plaintiffs contend that this Court necessarily has *in rem* jurisdiction over the action because "Plaintiffs seek to quiet title to property—the [P]ainting—that is physically located within this district." Doc. 28, Resp., 3. The Court disagrees.

In *Shaffer v. Heitner*, the Supreme Court addressed the due process requirements for jurisdiction based on property located in the forum state. 433 U.S. 186 (1977). There, a shareholder filed a shareholder derivative suit in Delaware against the directors and officers of a corporation. *Id.* at 189–90. In connection with the suit, the Delaware court issued a sequestration order seizing the out-of-state defendants' common stock and options, which were considered property "located" in Delaware as their legal situs of ownership. *Id.* at 191–92. The

-6-

question before the Court was whether the Delaware court could exercise jurisdiction over the suit solely because it held the defendants' property. *See id.* at 189.

Despite *in rem* jurisdiction's historical past, the Court cautioned that "traditional notions of fair play and substantial justice can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage." *Id.* at 212 (internal alteration and quotation omitted). The Court further dispelled "the fiction that an assertion of jurisdiction over property is anything but an assertion of jurisdiction over the owner of the property." *Id.* Accordingly, the Court held that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* at 212 (italics added). And Delaware's jurisdiction was therefore constitutionally impermissible based on the defendants' lack of contacts. *Id.* at 216–17.

To be sure, despite *Shaffer*'s apparent breadth, *in rem* jurisdiction over property—without a minimum contacts analysis—may be appropriate in certain cases. *See Merchs. Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespi*e, 663 F.2d 1338, 1350 n.18 (5th Cir. 1981) (holding that *Shaffer* does not apply to *in rem* admiralty actions against foreign ships); *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 630 (1990) (suggesting, in a three-vote plurality, that *Shaffer*'s holding was about *quasi in rem* jurisdiction functioning as a form of personal jurisdiction).

But, discussing *Shaffer*, several Justices also observed, "the critical insight of *Shaffer* is that all rules of jurisdiction, even ancient ones, must satisfy contemporary notions of due process." *Burnham*, 495 U.S. at 630 (1990) (Brennan, J., concurring).  This is such a case. Here, Plaintiffs seek to hale Amaru to the Northern District of Texas for declaration as to the ownership and copyright of the Painting and Image, and their action is against Amaru directly and personally.

-7-

To conclude that the Court could assert jurisdiction over Amaru merely because of the Painting's presence in Texas would place ancient forms over modern notions of due process.

And even if the Court were to apply Latin labels, the action is, at most, *quasi in rem* and still subject to *Shaffer*'s mandate. Plaintiffs assert rights directly against Amaru, and their claim of ownership over the Painting is akin to a quiet title action. *Compare Bodine v. Webb*, 992 S.W.2d 672, 676 (Tex. App.—Austin 1999, no pet.) ("A *quasi in rem* proceeding is an action between parties where the object is to reach and dispose of property owned by them or of some interest therein."), *and Hanson*, 357 U.S. at 246 n.12 ("A judgment quasi in rem affects the interests of particular persons in designated property."), *with Bodine*, 992 S.W.2d at 676 ("An *in rem* action is a proceeding or action instituted directly against a thing, an action taken directly against property, or an action that is brought to enforce a right in the thing itself."). Accordingly, the Court will apply the familiar due process standard under *International Shoe* that requires the defendant have certain minimum contacts with the forum state.

B.    *Plaintiffs Have Not Met Their Burden for Establishing Personal Jurisdiction*

The Plaintiffs do not plead, nor is there any basis to allege, general jurisdiction over Amaru. Amaru is a Delaware corporation with its principal place of business in California, Doc. 24, First Am. Compl., ¶ 4, and nothing in the facts suggests Amaru is essentially "at home" in Texas, *see Sangha*, 882 F.3d 96, 101. Accordingly, if the Court has jurisdiction over Amaru, it must be specific personal jurisdiction.

In adapting the minimum contacts standard to the property context, the *Shaffer* Court instructed:

> the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying

> controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. The State's strong interests in assuring the marketability of property within its borders and in providing a procedure for peaceful resolution of disputes about the possession of that property would also support jurisdiction . . . .

*Shaffer*, 433 U.S. at 207–08. The Court finds that this is the "unusual" case contemplated in *Shaffer*. *See id.*

It is well-established that a defendant cannot be haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted). Rather, the necessary relationship between the defendant and the forum state "must arise out of the contacts that the 'defendant *himself*' creates within the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King*, 471 U.S. at 475). It is also well-established that cease-and-desist letters alone are insufficient to establish personal jurisdiction. *See, e.g.*, *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386 (5th Cir. 2008); *Thousand Trails, Inc. v. Foxwood Hill Prop. Owners Ass'n, Inc.*, 1999 WL 172322, at *3 (N.D. Tex. Mar. 22, 1999) (Fitzwater, J.) ("The vast majority of the courts have held that the nonresident defendant's action in sending a demand letter to the plaintiff is insufficient to create personal jurisdiction.").

Here, Amaru's contacts are insufficient to establish personal jurisdiction. Amaru is not registered to conduct business in Texas, has not conducted business in Texas, and does not have a registered agent in Texas. Doc. 26, Whalley Decl., ¶¶ 6, 11. Rather, the extent of Amaru's contacts with Texas are limited to the cease-and-desist letters and correspondences regarding the status of the litigation. *See* Doc. 26, Rothschild Decl., ¶¶ 19–23; *see also* Doc. 24, First Am. Compl., ¶ 6. Amaru sent a letter to Heritage after it learned of the Painting's auction and

demanded Heritage withdraw the Painting and return it. *See* Doc. 26, Rothschild Decl., Ex 7. Amaru corresponded by telephone and in writing with Zelus's counsel, who was located in Texas, in an attempt to resolve the dispute. *Id.*, Ex. 10. And Amaru notified Heritage of its intent to file suit in California to recover the Painting. *Id.*, Ex. 11. These contacts cannot be the basis of personal jurisdiction in Texas. *See Stroman Realty*, 528 F.3d at 386.

Similarly, the Painting's location in Texas is solely the result of Plaintiffs' random, fortuitous, and unilateral actions. Brent moved to Texas in 2019. *See* Doc. 25, Mot. Dismiss, 2–3. And the Painting arrived in Texas in 2021, when Zelus purchased it. *See* Doc. 24, First Am. Compl., ¶¶ 2, 20. Contrary to *Shaffer*, therefore, Amaru had no "expected [] benefit" in Texas's protection of its interest. *Cf.* 433 U.S. at 207–08. Instead, Plaintiffs brought the Painting to Texas and subsequently filed a declaratory action against Amaru. Due process cannot turn on such a formality.

## IV.

## CONCLUSION

In sum, the Court resists Plaintiffs' attempt to base jurisdiction on the Painting's presence in this district. Applying the minimum contacts analysis under *International Shoe*, the Court finds that Amaru lacks the contacts necessary for personal jurisdiction. The Court therefore **GRANTS** Amaru's Motion to Dismiss (Doc. 25) and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' First Amended Complaint. Additionally, because the Court does not rely on the allegedly new argument in Amaru's reply, the Motion to Strike Defendant's Reply Brief (Doc. 34) is **DENIED AS MOOT.**

SO ORDERED.

SIGNED: February 22, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE